UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANCIS BURGER,

        Plaintiff,

v.

                                                Case No. 07-11870

ALLSTATE INSURANCE CO.,            Honorable Julian Abele Cook, Jr.

        Defendant.

ORDER

On March 30, 2007, the Plaintiff, Francis Burger, filed a complaint in the Wayne County Circuit Court of Michigan which reflected his dispute with the Defendant, Allstate Insurance Co., ("All State") over issues relating to benefits under an automobile insurance policy that bound these two parties approximately twenty-five years ago.

Nearly four weeks later (April 27th), All State caused the state court action to be removed to this federal district court on the basis that this Court has subject matter jurisdiction pursuant to its diversity jurisdiction under 28 U.S.C § 1332.[1] On March 2, 2009, All State filed a motion for the entry of a partial summary judgment and/or dismissal pursuant to Fed. R. Civ. P. 56(c) and Fed.

---

[1] 28 U.S.C § 1332 states in pertinent part that: "(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between - (1) citizens of different States.

R. Civ. P. 12(b)(6),[2] to which Burger filed a timely response in opposition.

I.

Burger is a citizen of the State of Michigan and an insured customer of All State. All State is a corporation which is licensed by the State of Michigan and elsewhere throughout the United States to provide household and automobile insurance to the general public. On November 6, 1981, Burger entered into a contract with All State which was designed to provide him with automobile insurance coverage.

On April 2, 1982, Burger claims to have suffered severe and permanent injuries when he was struck by a motor vehicle while standing outside of his automobile, all of which caused him to sustain the disabling use of his right hand and to rely upon the virtually uninterrupted care by his wife. Burger also asserts that, despite being unable to work for ten months during the post-accident period immediately following the accident, he was able to return to work for the next twelve years until his retirement.

Following the accident, Burger's wife submitted receipts to All State for those services that her husband could no longer perform without the assistance of a health care provider. On August 19, 1983, she transmitted a letter to All State, along with the report from a physician who had urged Burger to continue his own physical therapy program at home. Although Burger maintains that all of the requisite "attendant care" had been performed by his wife since the accident of April 2, 1982,

---

[2] Fed. R. Civ. P. 56(c) states in pertinent part: . . . "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The provisions within Fed. R. Civ. P. 12(b)(6) permits a court to dismiss claims if and when a party has "fail[ed] to state a claim upon which relief can be granted."

it was his belief that she would continue her close personal attention in the future. Notwithstanding this representation, he failed or neglected to submit any request for reimbursement which stemmed from her invaluable "health care"services.    On April 3, 1985, Burger indicates that he received a call from a representative of All State who informed him that all of his  "service related benefits" had expired on the three year anniversary of the accident.  In retrospect, Burger claims to have understood this statement to mean that *all* of his claims for benefits terminated at the three year mark - a statement which Burger now believes was, in fact, a misrepresentation by All State.  It is this alleged misrepresentation upon which Burger relies in order to justify his failure to file any additional claims with All State.  However, All State disputes this allegation by contending that the statement by the All State representative was accurate and was not a misrepresentation of the benefits under the parties' contract.

On March 2, 2009, All State filed a motion pursuant to Fed. R. Civ. P. 56(c) and Fed. R. Civ. P. 12(b)(6), in which it maintained that (1) Burger had failed to state a claim of silent fraud, and (2) his claims of actual fraud, misrepresentation, and breach of contract should be summarily dismissed.³

II.

Initially, it should be noted that All State filed its motion along with the following caption: "Defendant's Motion For Partial Summary Judgment and/or Dismissal."  However, All State filed this motion after having filed an answer to the complaint, which effectively rendered its dispositive motion under Rule 12(b)(6) as an untimely dispositive pleading.  *See* 5B Wright & Miller, *Federal Practice and Procedure* § 1357, at 408 (3d ed. 2004). Furthermore, All State appears to improperly

---

³The Court will analyze All State's motions under the Fed. R. Civ. P. 56(c) summary judgment standard.

blur the difference between the standard for a summary judgment and the failure to state a claim when it cited to the deposition testimony in support of the latter. Therefore, the Court will interpret All State's motion under the procedurally available (and substantively appropriate) standard for summary judgment.

The purpose of a summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Citrate*, 477 U.S. 317, 322-24 (1986). When deciding a motion for summary judgment, the Court must consider any pleadings and discovery material on file in a light that is most favorable to the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991). Therefore, the moving party bears the burden of showing the absence of any genuine issue of a material fact. *Id.* at 323.

A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Evidence that "is merely colorable, or is not significantly probative" is not a sufficient basis upon which to rebut the entry of a summary judgment. *Id.* at 249-50. Thus, a summary judgment is appropriate if (1) the evidence that has been offered in support of a motion is so overwhelming that the proponent must prevail as a matter of law, or (2) the opponent fails to rebut the dispositive request for relief with evidence which creates a genuine issue of a material fact that is of consequence to the case. *Id.* at 252; *Celotex*, 477 U.S. at 322.

III.

The Court will begin by addressing All State's contention that it is entitled to a judgment as a matter of law on Burger's claim of silent fraud. In addition to arguing that there is no legal duty

4

of disclosure under the Uniform Trade Practices Act, All State also maintains that (1) any inquiries by Burger relating to those benefits available to him under the policy were specific in nature, (2) it did not voluntarily undertake a duty of disclosure, and (3) the insurer-insured relationship in this case does not - and did not - create a *per se* duty to explain the benefits of the policy to him.

Before reaching the issue of whether the prima facie elements of a silent fraud claim have been satisfied, Burger must first show that the alleged silence "occurred under circumstances where there was a legal duty of disclosure." *Buntea v. State Farm Mut. Auto Ins. Co.,* 467 F. Supp. 2d 740, 745 (E.D. Mich. 2006) (citing *M & D Inc. v. W.B. McConkey,* 585 N.W.2d 33, 37 (Mich. Ct. App. 1998) (citing *United States Fid. and Guar. Co. v. Black*, 313 N.W.2d 77 (Mich. 1981)). "The gist of the [silent fraud] action is fraudulently producing a false impression on the mind of the other party." *Basirico v. State Farm Mut. Auto. Ins. Co.,* 2008 WL 2446906 (E.D. Mich. 2008) (citing *M & D Inc.,* 585 N.W.2d at 39).

As an example, the legal duty to disclose may arise if insured makes a specific and direct inquiry, and the insurer makes an incomplete reply as an affirmative misrepresentation. *Hord v. Envtl. Research Inst. of Michigan,* 617 N.W.2d 543, 550 (Mich. 2000) (citing *M & D*, *Inc.,* 585 N.W.2d at 38). A misrepresentation under this standard does not stem from mere non-disclosure. Rather, it comes from the suppression of the truth upon inquiry. *M & D, Inc.,* 585 N.W.2d at 39. All State urges the Court to adopt the position in this case that it did not have any duty to disclose the benefits to Burger under his insurance policy. As an aside, All State also notes that Burger has never alleged that it was ever asked by him to describe all of the benefits to which he was entitled.

Burger takes issue with this argument, contending that All State, on the basis of its existing insurer-insured relationship with him, (1) had a statutory duty to disclose, (2) possessed a duty to

disclose following his inquiries, and (3) voluntarily undertook the duty to disclose. In an attempt to support its duty of disclosure argument, Burger submits that the Uniform Trade Practices Act creates a statutory duty which, in essence, prohibits the misrepresentation of benefits by an insurer under an insurance policy. In support of this position, Burger proffers the plain language of Mich. Comp Laws. §500.2006(3) which states in pertinent part that "(a)n insurer shall specify in writing the materials that constitute a satisfactory proof of loss not later than 30 days after receipt of a claim unless the claim is settled within the 30 days."

While it is true that a statute can give rise to a legal duty, his reliance upon this legislative enactment in support of this argument is misplaced. *See Overby v. Johnson,* 418 F.Supp.471, 472 (E.D. Mich. 1976). In *Buntea v. State Farm Mut. Auto Ins. Co.,* for example, the court reasoned that although the Uniform Trade Practices Act "creates, among others, a statutory duty on insurance carriers not to misrepresent benefits to policy holders, a review of the statute does not reveal any form of affirmative duty to disclose." 467 F. Supp. 2d at 745. Thus, it appears that a prohibition against misrepresentations under the Uniform Trade Practices Act would arise only if Burger had asked All State for a full disclosure his benefits, for which he received an incomplete answer.

Here, Burger asserts a claim of "silent fraud" without providing the Court with any evidence of an accompanying request to All State regarding the full extent of his benefits which, in turn, would trigger a duty to respond with full disclosure. *See id.* at 746 (no duty where plaintiff merely alleged silence). Burger also maintains that case law recognizes the duty of insurance companies to explain benefits, citing to *Johnson v. State Farm Mut. Auto. Ins. Co.,* 455 N.W.2d 420 (Mich. Ct. App. 1990) *rev'd on other grounds* and *Hudick v. Hastings,* 637 N.W.2d 521 (Mich. Ct. App.

6

2001).[4] However, neither of these cases involved circumstances that are apposite to the case that is now before the Court. *See Johnson*, 455 N.W.2d at 422; *Hudick*, 637 N.W.2d at 523. Neither case addresses the principle question at issue in this case (namely, whether the insurance company has a duty to disclose where the insured does not question the benefits being offered). While the *Johnson* court noted in dicta that an insured ought to be able to "reasonably rely" upon their insurer to inform them of benefits available under their policy, it stopped short of requiring insurance companies to adopt an affirmative duty of disclosure. 455 N.W.2d at 426. Furthermore, *Hudick* merely includes the "reasonably rely" language from a *Johnson* footnote without offering any additional analysis or support. 637 N.W.2d at 526 n.1.

Accordingly, the Court finds that Burger has failed to support the proposition that the Uniform Trade Practices Act contains within it an affirmative duty of disclosure on insurers.

Burger also argues that All State had a legal duty to fully disclose all of his rights under the parties' insurance contract following its receipt of his "submission of bills and other questions." Even assuming, *arguendo,* that case law supports a duty, which is premised upon "inquiry notice," Burger has failed to submit any evidence that would allow for its application. He has presented evidence of various claims that had been submitted by him for reimbursement along with assertions that questions were asked of All State with regard to these claims.[5] However, there is no indication in this record which would suggest that he ever inquired as to the totality of benefits available under

---

[4]Burger also cites *Weber v. Travelers Mut. Auto. Ins. Co.,* 873 F. Supp. 2d 201 (S.D. Iowa 1994); *Dercoli v. Pa. Nat. Mut. Ins. Co.,* 554 A.2d 906 (Pa. 1989); *Sarchett v. Blue Shield of Cal.,* 729 P.2d 267 (Cal. 1987). Inasmuch as none of these cases involve the application of Michigan law, the Court concludes that they are collectively inapposite to the dispute herein.

[5]*See* Burger's Exhibits A, K, L, M, O, P.

7

the now-challenged policy. On the contrary, Burger's wife (who handled all of the correspondence with All State) testified that she did not recall ever specifically asking All State about the benefits to which her husband would be entitled to receive under the policy. [6]

As an alternative to any affirmative or assumed duty, Burger maintains that an obligation may also arise when one voluntarily undertakes it. This position has been widely imposed by courts in those situations in which a defendant has voluntarily assumed a responsibility despite being under no legal obligation to do so. *See Sponkowski v. Ingham County Road Comm'n,* 393 N.W.2d 579, 581 (Mich. Ct. App. 1986). Consistent with the analysis by the Court in the section above, Burger has failed to set forth any evidence or applicable case law which would support a finding that All State voluntarily assumed a duty to advise him of all benefits available under the insurance policy.

In his pursuit of this argument, Burger submits that All State maintained a company wide policy to explain benefits to all of their customers upon notice of an accident. However, this policy does not, on its own, provide evidence that All State actually assumed an obligation that it was not otherwise legally required to perform. *See Buntea,* 467 F. Supp. 2d at 746-47. In addition, Burger made reference to a line item on an All State call log in which a representative of the insurer thought it best to meet with him to "explain what would be paid, not paid, or paid at a later date"[7] in connection with the accident. However, there is no reference in the All State call log or anywhere else in the claim file for that matter that this meeting ever took place. Without providing any evidence that All State undertook such a duty to actually speak about the available benefits under

---

[6]*See* the Defendant's Exhibit C pgs. 26-29.

[7]*See* Burger's Exhibit B pg. 8.

the policy, Burger's theory fails to persuade the Court of its application to the facts at hand.

Finally, Burger proclaims that the very nature of an insurer-insured relationship gives rise to a duty to explain benefits. Although case law suggests that there is a relationship of trust and confidence between an insurer and an insured, there is the general rule that the insured does not have a duty to disclose all benefits is not altered unless:

> (1) the agent misrepresents the nature or extent of the coverage offered or provided,
>
> (2) an ambiguous request is made that requires a clarification,
>
> (3) an inquiry is made that may require advice and the agent, though he need not, gives advice that is inaccurate, or
>
> (4) the agent assumes an additional duty by either express agreement with or promise to the insured.

*Harts v. Farmers Ins. Exchange,* 597 N.W.2d 47, 52 (Mich. 1999).

In this case, there is no evidence in the record which suggests that All State misrepresented the available coverage to Burger. As noted above, he had submitted claims and, presumably, questions relating to those claims, to All State. However, there is nothing in the record which suggests that Burger and/or his wife ever requested a full explanation of available benefits. Moreover, there is no evidence in the record that Burger ever made a request about insurance coverage which, arguably, might be construed as ambiguous or would have required clarification. Finally, Burger has not presented any evidence that All State expressly agreed or promised to advise Burger about insurance benefits generally or his policy specifically. Consequently, no event occurred that could or would except this case from the general rule that All State-insurer owed Burger-insured no duty to advise about benefits. Thus, the Court concludes - as it must - that Burger has failed to provide evidence in the form of an affidavit or otherwise that All State voluntarily

9

undertook a duty and, thereafter, gave inaccurate advice.

IV.

All State, in pursuit of its application for relief, next argues that there is no genuine issue of a material fact with respect to Burger's claim of actual fraud. Under Michigan law, a plaintiff must establish the following elements in order to have a valid claim of fraud:

> (1) That [the insurer] made a material representation; (2) that it was false; (3) that when [the insurer] made it [the insurer] knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that [the insurer] made it with the intention that it should be acted upon by [the] plaintiff; (5) that [the] plaintiff acted in reliance upon it; and (6) that [the] plaintiff thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.

*Hi-Way Motor Co. v. Int'l Harvester Co.,* 247 N.W.2d 813, 816 (Mich. 1976). In addition, because fraud must be pleaded with particularity (Mich.Ct.R. 2.112(B)(1)) and "is not to be lightly presumed, but must be clearly proved," *Palmer v. Palmer*, 160 N.W. 404, 414 (Mich. 1916), "by clear, satisfactory and convincing evidence," trial courts should ensure that these standards are clearly satisfied with regard to all of the elements of a fraud claim. *Cooper v. Auto Club Ins. Ass'n*, 751 N.W.2d 443, 451 (Mich. 2008) (citing *Youngs v. Tuttle Hill Corp.*, 128 N.W.2d 472, 473 (Mich. 1964)).

In Burger's allegations of actual fraud, he has essentially stated that All State, after notifying him that his "service related benefits" had expired at the three year anniversary of the accident, created the false impression that all policy related benefits had expired. According to Burger, such action was fraudulent because All State - in knowing that he was entitled to additional benefits under the policy (e.g., attendant care benefits) - sought to mislead him through the misleading statements concerning the service related benefits. Significantly, neither Burger nor his wife

questioned All State regarding the possibility of any additional benefits that would be available outside of the "service"domain.[8]  *See Buntea*, 467 F. Supp. 2d at 747-48.

The statements made by All State concerning the expiration of service related benefits was simply the recital of a clause within the policy. These statements regarding the availability of a particular type of benefit to an insured do not reach the level of the misrepresentation standard that is required for a viable claim of fraud under Michigan law.  *See Bromley v. Citizens Ins. Co. of Am.*, 317 N.W.2d 318, 320 (Mich. Ct. App. 1982)).  The *Bromley* court held that the insurance company had not committed fraud upon its insured when it responded to an inquiry from the insured regarding coverage for an accident by stating that the policy did not apply under the circumstances involved.  *Id.*  "[The] [d]efendant merely told [the] plaintiff  its reasonable position on the question of coverage.  It was incumbent upon [the] plaintiff at that time to seek legal assistance if he disagreed . . . Since the statements were not false in fact at the time made, no misrepresentation action was pled."  *Id.*

Similarly, the statements made by All State in the case at bar were simply recitations of its position that service related benefits under the policy were about to expire.  Furthermore, the statements were in conformity with the parties' insurance policy. A review of the facts in this case reveals that  Burger has not alleged anything outside of these statements which might have plausibly led him to believe otherwise.  Burger's attempt to distinguish *Bromley* on the ground that it concerned the liability of an agent - and not the insurance company - is not persuasive.  Moreover, Burger's reliance upon a case which distinguished *Bromley* is misguided in that the issues which

---

[8]Furthermore, Burger does not offer any pertinent case law to support his assertion that false impressions are sufficient to support a claim for fraud.

11

formed the basis for the ultimate decision are substantively different than those that are now at issue here. *See Hamilton v. Gordon* 354 N.W.2d 323, 326 (Mich. Ct. App. 1984) (distinguishing *Bromley* because the insurer in *Hamilton* had affirmatively concealed important information that prejudiced the insured).

Finally, even if All State had represented that all of his benefits had ended - and not just service related benefits - Burger has not created a genuine issue of a material fact with regard to a requisite element of his fraud action, namely, reasonable reliance. Fraud cannot be "perpetrated upon one who has full knowledge to the contrary of a representation." *Montgomery Ward & Co. v. Williams*, 47 N.W.2d 607, 611 (Mich. 1951). An insured party is presumed to have read the terms of his insurance policy. *See Van Buren v. St. Joseph Co. Village Fire Ins. Co.*, 28 Mich. 398, 408 (1874). Therefore, if the insurer has made a statement which clearly conflicts with the terms of the policy, an insured cannot argue that he reasonably relied upon it without questioning its provisions in light of the policy. *See McIntyre v. Lyon*, 37 N.W.2d 903, 906 (Mich. 1949).

In conclusion and without any allegations that (1) All State affirmatively told Burger that all benefits expired at the three year anniversary of the accident, and (2) this statement was known to be false, he cannot establish a prima facie case of fraud.

V.

Finally, All State maintains that Burger's overall damages for alleged breach of contract are limited under the laws of Michigan to those incurred by him after April 27, 2006 - a date which is one year prior to the commencement of this suit. Mich. Comp. Laws. § 500.3145 states in pertinent part:

> An action for recovery of personal protection insurance benefits payable. . . for accidental bodily injury may not be commenced later than 1 year after the date of the

accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits. . . . .

While it is true that the statute typically requires the injured (insured) party to file a lawsuit within one year after the date of the accident, this statutory obligation is waived when, as here, the insurance company has paid benefits under the policy. *See id.* However, as stated by All State, "the claimant may not recover benefits [under these circumstances] for any portion of the loss incurred more than 1 year before the date on which the action was commenced." *Id.*

The Michigan Supreme Court has held that the one year rule is flexible only when fairness and equity demand it. *See Devillers v. Auto Club Ins. Ass'n,* 702 N.W.2d 539, 556 (Mich. 2005) (only fraud, mutual mistake, or other "unusual circumstance" can be used to invoke court's equitable power). Burger claims that the alleged fraud herein warrants this application of equitable principles by the Court to suspend the one year back rule. However, as explained above, Burger's fraud claims cannot survive - and have not survived - All State's summary judgment motion. Furthermore, an examination of the record reveals that there are no other equitable considerations or unusual circumstances here which warrant the suspension of this rule.[9] Therefore, Burger's breach of contract claim is limited to damages that he has sustained since April 27, 2006. (i.e. one year prior to the filing of this suit)

III.

---

[9]The Court notes that during oral argument Burger proffered the unpublished case of *Paquette v. State Farm Mutual Auto Ins. Co.,* No. 279909 (Mich. Ct. App. July 21, 2009) in support of suspending the one year back provision.. The Court declines to adopt the *Paquette* findings because (1) Burger has failed to show any kind of reliance upon the All State's claimed misconduct, and (2) the case is unpublished which renders it not to be binding on this Court. *See U.S. v. Sanford,* 476 F.3d 391, 396 (6th Cir. 2007).

13

Accordingly, for the reasons that have been stated above, All State's motion for partial summary judgement is granted.

IT IS SO ORDERED.

Dated: September 28, 2009         S/Julian Abele Cook, Jr.
    Detroit, Michigan        JULIAN ABELE COOK, JR.
       United States District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 28, 2009.

       s/ Kay Doaks
       Case Manager